**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| Lafarge North America, Inc., f/k/a Lafarge Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) | No. 05-1110-CV-W-FJG |
| Discovery Group LLC, et al., | ) ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court are: (1) Defendants' Motion to Strike portions of expert reports (Doc. No. 375); and (2) Plaintiff's Motion to Strike expert reports (Doc. No. 377).

**I.     Background**

This action involves a real estate transaction where plaintiff sought the assistance of Discovery Group to locate an appropriate site for the relocation of plaintiff's Kansas City, Missouri office. Plaintiff ended up selecting the "Chapel Ridge" site in Lee's Summit, Missouri, in 1999. Plaintiff was not informed of the potential formation of the Strother Tax District, which was approved in 2000. In 2001, representatives of the Strother District contacted plaintiff seeking collection of sales tax surcharges. Plaintiff believed that it was not obligated to collect sales taxes from the Chapel Ridge site, but sought clarification from the Missouri Department of Revenue ("DOR"). In 2002, the DOR issued a letter ruling and found that plaintiff must report its sales taxes from the Chapel Ridge site, and plaintiff ended up owing $271,516.82 in sales taxes and eventually settled for $120,000.

In November 2005, plaintiff commenced this lawsuit. Plaintiff makes the following claims (See Second Amended Complaint, Doc. No. 229): Count I–breach of contract against defendant Discovery Group; Count II–Negligence against all defendants; Count III–Fraudulent Misrepresentation against all defendants; Count IV–Negligent Misrepresentation as to all defendants; Count V–Rescission against defendant Explorer

Investments; Count VI–Breach of Fiduciary Duty as to all defendants.

**II.     Pending Motions to Strike Expert Testimony**

   **A.     Legal Standards**

   Rule 702 of the Federal Rules of Evidence provides:

   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent of expert evidence must show by a preponderance of the evidence that the expert is qualified to render his opinion and the methodology underlying his conclusions is valid. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 857-58 (8th Cir. 2006). Under Daubert all expert testimony must be "[n]ot only relevant, but reliable." See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). Furthermore, "[w]here opinion evidence . . . is connected to existing data only by the ipse dixit of the expert, a district court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Pro Serv. Auto., L.L.C. v. Lenan Corp., 469 F.3d 1210, 1216 (8th Cir. 2006).

   Additionally, the court must separate expert opinion evidence based on "'good grounds' from subjective speculation that masquerades as scientific knowledge." See Presley v. Lakewood Engineering and Mgf. Co., 553 F.3d 638, 643 (8th Cir. 2008). This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid, and whether that reasoning or methodology can properly be applied to the facts in issue. Daubert, 509 U.S. at 592; see also Fireman's Fund Ins. Co. v. Canon U.S.A., Inc., 394 F.3d 1054, 1057 (8th Cir. 2005). To be admissible, expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in

resolving a factual dispute," and "must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590-91 (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)).

Factors district courts may consider in determining the reliability of expert testimony include: (1) whether the theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error for the theory or technique; and (4) the degree of acceptance of the theory or technique within the relevant discipline. Daubert, 509 U.S. at 593-94; Pro Serv. Automotive, L.L.C. v. Lenan Corp., 469 F.3d 1210, 1215 (8th Cir. 2006), quoting Smith v. Cangieter, 462 F.3d 920, 923 (8th Cir. 2006). The reliability test is "flexible," and the factors established by the Supreme Court in Daubert are not a "'definitive checklist or test.'" Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141-42 (1999)(quoting Daubert, 509 U.S. at 593).

### B. Defendants' motion to strike plaintiff's experts (Doc. No. 375)

#### 1. Testimony as to Legal Obligations

Defendants argue plaintiff's experts cannot testify to legal or contractual obligations or the fulfillment of those alleged obligations. Defendants cite to large portions of the reports of experts Bruce Baker (an expert in the real estate profession), Lawrence Glaze (an expert in the real estate profession), and Stanley House (a damages expert), indicating that such testimony from these experts would amount to inadmissible legal conclusions.

In particular, defendants argue that statements in Baker and Glaze's reports regarding whether Discovery Group, LLC ("Discovery Group") fulfilled statutory, regulatory, or contractual obligations constitute legal conclusions that are improper for an expert to proffer. See Southern Pine Helicopters, Inc. v. Pheonix Aviation Managers, Inc., 320 F.3d 838, 841 (8th Cir. 2003) (finding expert cannot testify as to whether party violated law, however, further noting "industry practice or standards may often be relevant in cases like

3

the present one, and expert or fact testimony on what these are is often admissible"); see also Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1096 (5th Cir. 1995) (excluding expert testimony regarding the interpretation of a contract); Lacey v. State Bd. of Registration for the Healing Arts, 131 S.W.3d 831, 838 (Mo. Ct. App. 2004) (contract interpretation is question of law).

In response, plaintiff indicates that testimony as to the standard of care is permissible under FRE 702 and 704 to help the jury determine whether defendants were negligent or breached a duty in their roles as real estate agents. In particular, plaintiff notes that defendants have taken the statements of the experts out of context, in order to present otherwise admissible statements (which are the opinions arrived at after giving extensive background information) as raw, unsupported legal conclusions. Plaintiff indicates that the knowledge of the conduct required by Missouri real estate laws and regulations is appropriate and relevant because knowledge of the laws and regulations are key elements of the knowledge required of real estate licensees. Plaintiff compares this to medical negligence cases, where expert testimony on a physician's standard of care is routinely admitted. Plaintiff indicates that the expert testimony of Baker and Glaze does not simply tell the jury what result to reach, but will help the jury evaluate whether Discovery Group and the other defendants comported with the standard of care in their dealings with plaintiff.

Plaintiff notes that its experts were all responsible for formulating their own opinions and drafting their own reports, and thus even if Baker and Glaze cross the line between proper expert opinion and improper legal conclusions at times, counsel for Lafarge can prevent their actual testimony at trial from crossing those lines through appropriate questioning at trial.

After considering the reports of Baker and Glaze and the arguments of the parties, the Court finds that defendants' motion should be **DENIED** in this respect. Standard of care for real estate professionals is a relevant concern in this matter, and the opinions of

these experts speak to that concern.[1]

With respect to Stanley House, defendants argue that Mr. House proffers a legal conclusion under the guise of providing an expert opinion, by expressing: "Lafarge continues to honor the terms of the Lease Agreement as lessee/sublessor." Expert Report of Stanley House, at 2. However, after considering this statement, the Court concludes that it is not an opinion, and instead is a factual assumption that defendants are entitled to challenge on cross examination. Defendants' motion is **DENIED** in this aspect.

2. Glaze opinion; issues as to relevance and reliability

Defendants argue the Court should exclude Mr. Glaze's opinion because it is based on inaccurate information and false assumptions, in that, throughout his report, Mr. Glaze relies on Discovery Group's "Marketing Materials," which he attaches to his report as Exhibit H, and Discovery Group's "website," which he attaches to his report as Exhibit I. Mr. Glaze relies on these materials to support his opinion that "Discovery Group represented to Lafarge that they could provide Lafarge with a turnkey solution for Lafarge's relocation needs by acting as a single source for all of their relocation activities." However, the "Marketing Materials" and "website" Mr. Glaze relies upon for this conclusion did not exist until well after plaintiff had hired Discovery Group and signed the exclusive representation agreement. Therefore, defendants state the Court must exclude Mr. Glaze's opinion that Discovery Group represented to plaintiff that it would "act as a single source for all of their relocation activities" because this opinion is based upon inaccurate facts and a false assumption that the "Marketing Materials" and "website" he relies on were available to plaintiff at the time of the transaction.

Plaintiff indicates that Glaze did not rely on inaccurate information and false assumptions. Instead, plaintiff indicates that the factual basis for this testimony goes to

---

[1]Counsel will be expected to use appropriate questioning at trial to keep the experts from making improper legal conclusions, however.

credibility, not admissibility, and thus is an area for cross-examination. Further, regardless of when the information in Glaze's report was published, "it is indisputable that Discovery Group made the 'single source' representation before the events at issue in this case." See Doc. No. 398, p. 14.

The Court finds that the information contained in Exhibits H and I is not relevant as that information was not created until after plaintiff had hired Discovery Group. Therefore, the Court finds that the opinion "Discovery Group represented to Lafarge that they could provide Lafarge with a turnkey solution for Lafarge's relocation needs by acting as a single source for all of their relocation activities," (Glaze report, pp. 4-5), to be inadmissible. Defendants' motion, therefore, is **GRANTED** in this aspect.

3. Baker opinion, technical expertise

Defendants note that, to be helpful to the factfinder and thus admissible, an expert's testimony must be "beyond the ken of people of ordinary intelligence." U.S. v. Davis, 457 F.3d 817, 824 (8th Cir. 2006) (internal citations omitted). Defendants note certain of Mr. Baker's opinions are not based on any specific expertise, but rather reflect Mr. Baker's personal view or opinions as to the facts and evidence. For example, Mr. Baker compares a description of Lafarge's engagement of Discovery Group (after completion of the project) with Discovery Group's initial proposal letters to Lafarge. See Baker report, at 33, ¶ 2. The Court agrees this comparison of language could be easily performed by the factfinder and is not a matter that requires any particular expertise. Therefore, the Court **GRANTS** defendants' motion to strike in this regard.

Additionally, Mr. Baker describes Lafarge's expectations of its engagement of Discovery Group based, apparently, on documents and statements made by Discovery Group. Baker report at pp. 33-34. Defendants indicate that the nature and extent of Lafarge's alleged expectations of Discovery Group are not a proper subject of expert opinion. Instead, defendants suggest that it is the province of the jury to determine

Lafarge's expectations. After reviewing the report and the parties' arguments, the Court finds that this proposed testimony improperly goes to Lafarge's state of mind, and should not be admitted into evidence. Therefore, defendants' motion to strike is **GRANTED** in this aspect.

    4.  House opinion; foundation

Defendants argue that many of the exhibits attached to Mr. House's report are not those reasonably relied upon by experts in his field, citing Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Intern., Inc., 851 F.2d 540, 544 (1st Cir. 1988). Defendants indicate that, under Int'l Adhesive Coating, Mr. House would have needed to examine Lafarge's business and financial records regarding payments made. However, contrary to defendants' assertion, Int'l Adhesive Coating does not stand for the proposition that the information relied upon by Mr. House is not the type of information normally relied on by an accountant. Furthermore, Int'l Adhesive Coating appears to stand for the proposition that whether the information is reasonably relied upon by experts in the field is an area for cross-examination, not for striking testimony.

Defendants further argue that (1) House's testimony regarding "special-purpose furnishings" lacks support in the record; (2) House's testimony regarding "out of pocket cost of move" lacks support in the record; and (3) House's testimony regarding the "telephone/computer cabling installation at Sugar Creek location" element of damage is not properly supported in the record. However, the Court finds that the alleged flaws pointed out by defendants are more properly the subject of cross-examination, not the striking of the testimony. Defendants' motion is **DENIED** in this aspect.

Finally, with regard to Mr. House's opinion that Lafarge incurred a total of $244,494.81 in damages based on Lafarge's improper reporting of its sales taxes, defendants argue that Mr. House makes the following unsupported "factual" claims:

  • Lafarge had historically reported sales at its branch level, and that the Missouri state tax had examined this practice "in the past without challenge."

7

- "As a result of the Strother District's assertion of Lafarge's failure to report and pay the Strother tax, the State concluded that Lafarge should have been reporting the area Ready Mix sales in Lee's Summit. . . . "

- That "additional sales taxes were not included in Lafarge customer invoices, nor collected."

- That "Discovery Group had been informed by Lafarge of Lafarge's intention to continue to locate a centralized order-taking and dispatch function at whatever location Discovery Group ultimately recommended."

Defendants argue that Mr. House does not point to anything in the record to support any of these statements, and thus these facts are unreliable and should be stricken. However, the Court notes that House is entitled to make factual assumptions as an expert witness. See Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc., No. 03-0378-CV-W-SOW, 2004 WL 5500075, at *3 (W.D.Mo. Mar. 3, 2004). Therefore, the Court will not strike these statements. Further, defendants argue that Mr. House's Exhibit H relies in part on Lafarge's internal calculations, and this evidence is not the type that an accountant would normally look to in determining amounts actually paid. However, the Court finds that defendants have not demonstrated that this is evidence an accountant would not normally rely upon. Defendants' motion to strike Mr. House's report is **DENIED.**

**C.     Plaintiff Lafarge North America Inc.'s Motion to Exclude the Report and Testimony of Defendants' Proffered experts D. Edward Elder and Kenneth Jaggers with Suggestions in Support Thereof (Doc.No. 377)**

In this motion, plaintiff seeks to exclude the testimony of these two experts for the reasons stated in its original motions and suggestions in support (Doc. Nos. 136, 137, 138 and 139).

1.     D. Edward Elder

Plaintiff argues that this report should be excluded because Elder is not qualified to render an opinion as to industry practices or obligations of real estate developers, because

8

his claimed expertise is not as a developer. Plaintiff asserts that even if he was qualified, his report is not relevant or helpful because this case is about the industry practices or obligations of real estate agents, and not developers. Additionally, plaintiff argues that certain opinions improperly draw inferences about Lafarge's state of mind, misstate the facts, and are inadequately supported by reference to documents, studies or other facts. See Doc. No. 136.

### a. Qualifications of the Expert

Plaintiff indicates that Elder's claimed expertise lies within the area of brokerage, and not as a developer. Yet, the whole point of Elder's report is to attempt to explain the "standard industry practice" for a real estate developer. Plaintiff indicates that this is testimony that exceeds the scope of Elder's expertise, and therefore is unreliable and should be excluded. Notably, plaintiff does not explain why an experienced commercial real estate broker with experience in large scale transactions does not have the expertise necessary to opine as to what a developer ought to be relied on to do. In defendants' response, they indicate that Elder has extensive experience in both the real estate brokerage and development fields, and is qualified to testify regarding industry norms for both existing and new construction. Further, defendants indicate that plaintiff incorrectly assumes that the roles of real estate agent and broker/developer are mutually exclusive. The Court finds defendants' position has merit; plaintiff has not demonstrated that Elder lacks the expertise to render his opinions. Therefore, plaintiff's motion is **DENIED** in this respect.

### b. Relevance of the Report

Plaintiff indicates that the relevant issue in this case is whether Discovery Group failed to carry out its fiduciary duties as Lafarge's real estate agent. Plaintiff states that any discussion of Discovery Group's role as a real estate agent is conspicuously absent from Elder's opinion. Instead, plaintiff characterizes the report as general speculation about

9

what a developer that is not acting as a real estate agent might do if asked to build a divisional headquarters for a company like Lafarge. Plaintiff indicates that the expert testimony does not fit the particular facts of the case, and therefore such testimony is not relevant and has no potential to help the jury. See Concord Boat Corp. v. Brunswick Corp. 207 F.3d 1039, 1055 (8th Cir. 2000).

In response, defendants indicate that Elder has opined as to what Discovery Group, acting as both a broker and developer, had an obligation to do in this case. Defendants indicate that plaintiff has engaged in an "over-technical reading of Elder's opinion." As for "fit," defendants indicate that Elder's opinions as to the interplay between the practices of a broker and a developer are relevant, as Discovery Group ceased acting as plaintiff's broker at some point in their relationship, and then began acting as the developer. See Elder Report at 8 ("Between mid-September to early October 1999, Plaintiff and Discovery Group had clearly shifted their focus to development versus pursuing existing options for lease.").

The Court agrees with defendants that the status of Discovery Group as a broker or developer is relevant as to the duty owed to plaintiff at different points in time. Plaintiff can point out what it perceives as deficiencies in cross examination. Therefore, plaintiff's motion is **DENIED** in this aspect.

      c.  State of Mind

Plaintiff indicates that Elder's report makes improper statements and assumptions about Lafarge's state of mind, and that such testimony is inherently unreliable, based on speculation and conjecture rather than fact and informed expert opinion. See J.B. Hunt Transp., Inc. v. Gen. Motors Corp., 243 F.3d 441, 444 (8th Cir. 2001). Plaintiff indicates that these statements must be stricken:

  *  Presumably, that was the direction Diakiw was heading by corresponding with DAI. He was not looking for the developer to spend their time negotiating incentives as part of the Lafarge relocation. Elder Report at 7.

10

* Between mid-September to early October 1999, Lafarge and Discovery Group had clearly shifted their focus to development versus pursuing existing options for lease. Elder Report at 8.

* Discovery Group's leadership appeared to be consistent with the expectations for performance by the client. Elder Report at 8.

* The project continued to move forward at a pace that was consistent with Lafarge's desires. Elder Report at 9.

* Throughout the entire timeline of events there appeared to be a fluid and consistent flow of information, trust and transparency between the parties. Lafarge is a billion dollar company and presumable over the years been [sic] involved in multiple real estate transactions as a result of their core business operations. Elder Report at 12.

* Based on my review of the Diakiw deposition, Lafarge never intended for the Discovery Group to analyze the impact of its sales tax changing as a result of the pending move. Elder report at 12.

* In short, there were limited economic benefits to obtain in Lee's Summit which leads me to believe that potential incentives were not something of great importance to Lafarge as part of their decision to relocate to Lee's Summit. Elder Report at 12.

In response, defendants indicate that these are Elder's factual interpretations regarding plaintiff's actions, not testimony regarding plaintiff's state of mind. Defendants indicate that because of Elder's extensive experience representing tenants, he is qualified to interpret a tenant's action.

On this matter, the Court agrees with plaintiff. As with the testimony of Mr. Baker (discussed above), the Court will not allow testimony as to Lafarge's state of mind. Plaintiff's motion to strike as to the above- referenced statements is **GRANTED**.

### d. Factual Support

Plaintiff indicates that Elder's report is factually inaccurate, pointing to Elder's analysis of Diakiw's relationship with an "incentive specialist," Development Advisors Inc. (DAI). Plaintiff states that Diakiw testified that he did not independently initiate discussions with DAI, and thus plaintiff suggests that Elder's report to the contrary should be stricken.

However, this Court has denied plaintiff's motion in limine as to evidence regarding DAI (see Order, Doc. No. 431). Defendants further note that Elder's characterization of the underlying facts does not affect the admissibility of his testimony, and instead is an issue for cross examination. This Court agrees, and plaintiff's motion in this respect is **DENIED.**

Plaintiff also objects to Elder's failure to specify with particularity the information he considered in forming his opinions; Elder indicates that "documents produced as part of this case have been made available for my review," and that he "had access to all depositions." Elder Report at 6. Plaintiff states that it is unclear which documents Elder reviewed and/or relied on in forming his conclusions. However, this Court finds that this statement provides plaintiff with sufficient information as to what information Elder used to form his opinions; the Court will not strike Elder's opinion for this reason. Plaintiff's motion is **DENIED** in this aspect.

### 2. Kenneth Jaggers

Plaintiff indicates the testimony of Kenneth Jaggers, an appraiser who intends to testify about the appraised or market value of leases, is irrelevant because the contract value and reasonableness of leases at issue is undisputed. Plaintiff further indicates that Jaggers opines as to topics outside of the scope of his claimed expertise as an appraiser, rendering his report unreliable under FRE 702 and Daubert. The Court need only consider the issue of relevance.

Plaintiff argues that Jaggers' opinion is irrelevant, as it relates only to the rental rate or fair market value of a lease or sublease of Lafarge's new divisional headquarters, whereas here the damages are calculated on the difference between the two undisputed lease rates. Plaintiff notes that its expert, Stanley House, did not question the fairness or reasonableness of either the lease or sublease terms in his initial report, and therefore found Jaggers' report to be irrelevant. Thus, plaintiff argues that this report does not "fit" the particular facts of the case.

In response, defendants state that the effect of sales tax rates on the fair market value of property is directly relevant to plaintiff's claims. Missouri real estate licensing law requires a real estate broker to disclose "adverse material facts." R.S.Mo. § 339.740 (c). The term "adverse material facts" is defined as "a fact related to the property not reasonably ascertainable or known to a party which negatively affect[s] the value of the property." R.S.Mo. § 339.710(1). Jaggers' opinions provide evidence that an applicable sales tax rate cannot constitute an adverse material fact because it does not "negatively affect the value of" Lafarge's office space leasehold interest.

In reply, plaintiff suggests that this opinion is not relevant; instead, plaintiff indicates that defendants have conflated rental value or fair market value–neither of which the statute addresses–with the terms used in the statute, the "value of the property" to a reasonable prudent purchaser. See Osterberger v. Hites Constr. Co., 599 S.W.2d 221, 228 (Mo. App. E.D. 1980)(finding the test is whether "the fact concealed would have affected the conduct of a reasonably prudent buyer"). Plaintiff states that had Lafarge been apprised of the Strother TDD, or had Lafarge known that Discovery Group was not meeting with government officials to understand local government policies and economic incentives as they represented, Lafarge, as a reasonably prudent company, would never have agreed to relocate to Lee's Summit. Plaintiff indicates that the fair market value of the property is irrelevant to this inquiry, and therefore Jaggers' opinions are irrelevant and would serve to do nothing but confuse the jury.

After considering the parties' positions, the law, and Jaggers' opinion, the Court finds that Jaggers' opinion is irrelevant, as it does not address whether the fact allegedly concealed affected the value of the property to the reasonably prudent buyer. Therefore, plaintiff's motion to strike the testimony of Kenneth Jaggers is **GRANTED IN FULL.**

### III.     Conclusion

Accordingly, for the above-mentioned reasons, (1) Defendants' Motion to Strike portions of expert reports (Doc. No. 375) is **GRANTED IN PART** and **DENIED IN PART**, as referenced above; and (2) Plaintiff's Motion to Strike expert reports (Doc. No. 377) is **GRANTED IN PART** and **DENIED IN PART**, as referenced above.

**IT IS SO ORDERED.**

Dated:  07/30/10  
Kansas City, Missouri

/s/ FERNANDO J. GAITAN, JR.  
Fernando J. Gaitan, Jr.  
Chief United States District Judge